UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-612

| | |
|---|---|
| **DAVID W. SMITH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's (#11) and defendant's (#15) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

**FINDINGS AND CONCLUSIONS**

**I.   Administrative History**

Plaintiff filed an application for supplemental security income under title XVI of the Act in May 2013, alleging disability beginning July 6, 2011. (Tr. 228). The claim was denied initially and upon reconsideration. (Tr. 160, 167). Plaintiff requested an administrative hearing, and a hearing was held before Administrative Law Judge Valorie Stefanelli ("the ALJ") on April 28, 2016. (Tr. 65). On July 20, 2016, the ALJ denied plaintiff's claim after finding he was not disabled within the meaning of the Act. (Tr. 45-60). The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Plaintiff proceeded to file the instant action, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**II.    Factual Background**

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

**III.    Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will be affirmed.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity ("SGA") since March 6, 2013, the application date. (Tr. 50). At step two, the ALJ found that plaintiff has the following severe impairments: traumatic brain injury; depression; and opioid dependence. Id. At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 51-52).

Then, before step four, the ALJ found that plaintiff had the RFC to perform light work, with the following limitations: no requirement to climb ladders, ropes, or scaffolds; no requirement to balance while performing work duties; no concentrated exposure to hazards such as heights or dangerous equipment; and no commercial driving. (Tr. 52-58). The ALJ also noted that plaintiff can perform simple, routine, repetitive tasks with occasional decision-making, only occasional

changes to work duties, and only casual non-intense contact with others necessary to perform work duties. Id.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work due to his RFC. (Tr. 58-59). At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including small parts assembler, laundry folder, packager, document preparer, check weigher, and final assembler. (Tr. 59-60). As a result, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. (Tr. 60).

**D. Discussion**

The court has closely read plaintiff's memorandum (#12) in support of his Motion for Judgment on the Pleadings (#11). Plaintiff argues that the ALJ failed to provide a proper explanation for why plaintiff did not meet Listing 12.02 at the third step of the sequential evaluation, that the ALJ failed to account for plaintiff's ability to stay on task in his RFC, and that the ALJ cherry-picked evidence in her analysis. The court will consider each allegation in turn.

   *1.   The ALJ's explanation for Listing 12.02*

First, the court will consider whether the ALJ erred in analyzing plaintiff's condition under the Listings. Specifically, Listing 12.02 addresses organic mental disorders, and can be met by satisfying the specific requirements of both Parts A and B, or Part C alone. These requirements are as follows:

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>    1. Disorientation to time and place; or
>    2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
>    3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
>    4. Change in personality; or

  5. Disturbance in mood; or
  6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
  7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
  1. Repeated episodes of decompensation, each of extended duration; or
  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02 (2016).

  Here, contrary to plaintiff's assertions that the ALJ simply made broad conclusory allegations as to the Listings, the ALJ specifically discussed whether plaintiff met the requirements of Listing 12.02, and ultimately concluded that he did not. (Tr. 51-52). First, the ALJ analyzed the paragraph B criteria of Listing 12.02. The ALJ found that plaintiff had mild restrictions in activities of daily living, citing few activities of daily living, employment on a trash truck, a treating provider's statement that plaintiff needs a job (and was thereby capable of working), activities including fishing, gardening, washing dishes, and grass mowing, and a very high GAF score after

receiving and taking *Suboxone* for his substance abuse problems. (Tr. 51). While any one of these may be insufficient to justify mild restrictions instead of marked, taken together they clearly constitute substantial evidence supporting the ALJ's findings.

The ALJ proceeded to the next element of paragraph B, and found that plaintiff has moderate difficulties in social functioning. The ALJ noted altercations prior to the alleged onset date and problems with fighting in high school, but also points out that the record does not document consistent, ongoing problems with any of his providers on examination, and also no documentation of ongoing altercations since the alleged onset date. Finally, the ALJ noted that treatment notes do not suggest any substantial deficits in interaction. (Tr. 51). Once again, the ALJ has both made a finding, supported it with an explanation, and cited to substantial evidence.

The ALJ then analyzed plaintiff's condition under the next element of paragraph B, and found that plaintiff has moderate difficulties in concentration, persistence, and pace. The ALJ noted deficits upon examination, as well as fairly low scores upon testing, but contrasted these findings with prior test scores upon incarceration, few treatment notes documenting objective findings of deficits in concentration, persistence, and pace, and plaintiff's excellent response to treatment with an extremely high GAF score of 70. (Tr. 51-52). As with earlier criteria, the ALJ has made a finding, supported it with an explanation, and cited substantial evidence.

Finally, the ALJ considered the fourth element of paragraph B criteria, and found that plaintiff has experienced no episodes of decompensation of extended duration, citing to the absence of hospitalizations, exacerbations of his symptoms accompanied by loss of adaptive functioning, or increased treatment during the relevant time period. (Tr. 52).

The ALJ then turned to analysis under paragraph C, with similar results. In addition to

plaintiff's lack of episodes of decompensation, the ALJ also noted that he has not had a residual disease process or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement. (Tr. 52). As such, the ALJ found that plaintiff does not satisfy paragraph C's criteria. As plaintiff must satisfy both paragraph A and paragraph B together or paragraph C alone, the ALJ thus found plaintiff does not meet the requirements of Listing 12.02. Thus, contrary to plaintiff's assertions, the ALJ explicitly analyzed plaintiff under paragraphs B and C, found claimant did not meet its requirements, and explained why, citing to substantial evidence in support. As such, the court cannot find reversible error on this issue.

        2.     *The ALJ's RFC analysis*

Next, the court will consider plaintiff's arguments concerning the ALJ's RFC analysis. Plaintiff contends that the ALJ failed to account for plaintiff's ability to stay on task or explain why no limitation on plaintiff's ability to stay on task was necessary. Plaintiff cites to Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), for the proposition that the ALJ neglected to include a limitation on plaintiff's ability to stay on task in plaintiff's RFC, especially with plaintiff's moderate limitations with concentration, persistence, and pace.

However, the ruling in Mascio does not create an ironclad rule that the ALJ include an off-task limitation in every case involving moderate difficulties in concentration, persistence, and pace. See Holbrook v. Berryhill, 2018 WL 325244 at *4 (W.D.N.C. Jan. 8, 2018) (holding that Mascio does not stand for the proposition that "a detailed analysis of Plaintiff's ability to stay on task [is required] every time an ALJ finds moderate limitations in concentration, persistence or pace"). Where there is no explicit limitation included for the ability to stay on task, "as long as

the ALJ can connect her conclusion to the record by way of narrative reasoning, the RFC can take many forms in the face of moderate limitations in concentration, persistence, and pace." Darby v. Berryhill, 2018 WL 310136 at *6 (W.D.N.C. Jan. 5, 2018); see also Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017) (holding that Mascio "only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review'") (quoting White v. Colvin, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016)).

Here, the court finds no Mascio issue with the ALJ's RFC analysis. The ALJ's RFC provided a detailed narrative analysis of plaintiff's allegations of difficulties in concentration, persistence, and pace, as well as examination deficits, low and high test scores, treatments and his response, and objective findings relating to concentration, persistence, and pace, as well as a discussion at great length of evidence of plaintiff's ability to work. (Tr. 51-58). In doing so, the court finds that the ALJ has adequately explained her RFC findings, and that she has accounted for plaintiff's ability to stay on task with limitations on occasional decision-making, occasional changes to work duties, and casual non-intense contact with others. See Rice v. Berryhill, 2018 WL 912276, at *3 (W.D.N.C. Feb. 15, 2018) (affirming RFC finding that limited claimant to unskilled work, occasional public contact, and stable environment with no frequent changes); Bruce v. Berryhill, 2018 WL 736054, at *4 (W.D.N.C. Feb. 6, 2018) (holding that "a limitation regarding workplace changes and decision-making adequately accounts for a moderate limitation in concentration, persistence, and pace"). As such, the court finds no reversible error on this issue.

### 3. *The ALJ's analysis of the evidence as a whole*

Finally, the court considers plaintiff's allegation that the ALJ improperly cherry-picked evidence to support her findings, instead of reviewing the evidence and taking it into account as a

whole. Plaintiff argues that the ALJ completely ignored two head injuries plaintiff has suffered, that the ALJ overstated plaintiff's history of drug abuse, that the ALJ drew the wrong conclusions from plaintiff's lack of ongoing treatment for brain injury, that the ALJ improperly included her own observations at the hearing into her analysis, and that the ALJ overstated the significance of plaintiff's work activity since his alleged onset date.

Here, the court cannot find the ALJ cherry-picked any evidence, and that plaintiff's arguments appear instead to be asking this court to re-weigh the evidence in plaintiff's favor instead. First, while the ALJ focuses on only two head injuries out of a possible total of four, that is because those are the two injuries plaintiff alleged as strong indicators of disability; for example, plaintiff stated that his present difficulties began after his 2010 head injury, which the ALJ directly considered. (Tr. 51-54, 515). Plaintiff does not offer any indication that plaintiff's other injuries, each over a decade before the alleged onset date, had any bearing on the instant matter, and instead offers only speculative criticism of the ALJ's decision. As such, the court cannot find that this is cherry-picking of evidence sufficient to constitute reversible error.

Second, plaintiff argues that the ALJ erred by focusing too much on plaintiff's drug history, contending that the ALJ hoped to "tar [plaintiff] with the label of 'drug-seeker.'" (#12 at 17). The court cannot agree. Plaintiff himself admits to a history of drug abuse, including use after the alleged onset date when plaintiff tested positive in June 2012 for marijuana, cocaine, and opiates, facts which the ALJ may properly consider. (Tr. 582). The ALJ also considered plaintiff's ongoing concerns with medication, such as plaintiff's treatment with *Suboxone* for opiate addiction and withdrawal from 2013 to 2016 and his excellent response to such treatment, as well as his requests for pain medication like Morphine and Dilaudid. (Tr. 55). Again, plaintiff does not appear to offer

anything but speculative criticism, and the ALJ's analysis of plaintiff's drug history appears to be relevant to the claims made as such discussion helps in providing a complete picture of plaintiff's health. As such, the court cannot find reversible error on this basis.

Next, plaintiff argues that the ALJ erred by wrongly concluding that plaintiff has not received ongoing treatment for his brain injury or for any psychiatric impairments and points to an emergency room trip as evidence of the contradiction. However, the ALJ specifically addressed this in her opinion, stating that plaintiff "has not received any ongoing treatment, other than with the provider that prescribes [S]uboxone" and that plaintiff "has not required any inpatient hospitalizations and on the only occasion he presented to the emergency room with possible mental issues, the provider noted they really had to do more with legal concerns." (Tr. 56-57). The court therefore finds no support for this assignment of error as the ALJ's summary of the evidence and treatment is supported by evidence which the ALJ cited, and thus finds no basis for reversible error on this issue.

Finally, plaintiff argues that the ALJ wrongly incorporated her personal observations of plaintiff during the hearing into her opinion, along with misleading information on plaintiff's work history. In addition to "objective medical evidence," the ALJ may use other evidence in reaching her decision. 20 C.F.R. §§ 404.1529(a) and 416.929(a). Specifically, the ALJ may "consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); see also Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (holding that "the ALJ's observations" of plaintiff's demeanor at hearing were useful in determining answer to questions of pain and credibility). As such, the

court finds no problem with the ALJ incorporating her own observations at the hearing into her decision. In addition, it was not error for the ALJ to consider and cite to plaintiff's work history as evidence in her decision, as that evidence constitutes a "prior work record." As such, the court cannot find that the ALJ cherry-picked evidence, and thus finds plaintiff's assignment of error to be without support.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#11) is **DENIED**, the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: August 6, 2018



Max O. Cogburn Jr.
United States District Judge